**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE NORTHERN DISTRICT OF FLORIDA**


PENSACOLA MOTOR SALES, INC.,
a Florida Corporation, d/b/a
BOB TYLER TOYOTA,

       Plaintiff,

vs.

EASTERN SHORE TOYOTA, LLC.,
An Alabama Limited Liability Company,
DAPHNE AUTOMOTIVE, LLC.,
An Alabama Limited Liability Company,
DAPHNE ENTERPRISES, INC.,
An Alabama corporation, and
SHAWN ESFAHANI,
An individual,

       Defendants.
_____/

**COMPLAINT FOR CYBERSQUATTING**
**AND RELATED CAUSES OF ACTION**

    COMES NOW, Plaintiff, Pensacola Motor Sales, Inc., ("Plaintiff" or "BOB TYLER") by and through its attorneys hereby files a complaint against Defendants Eastern Shore Toyota, LLC. ("EASTERN SHORE"), Daphne Automotive, LLC. ("DAPHNE AUTOMOTIVE"), Daphne Enterprises, Inc. ("DAPHNE ENTERPRISES"), Shawn Esfahani, ("ESFAHANI") and Does 1- 10 for their blatant cybersquatting of Plaintiff's Distinctive Trademark and related infringing and deceptive activities.

And as support for this Complaint, Plaintiff offers the following allegations:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as the Plaintiff's cause of action arises under The Federal Trademark Act ("The Lanham Act of 1946"), 15 U.S.C. § 1051 et. seq.  Further, this Court has jurisdiction over the Plaintiff's pendent and common law claims pursuant to 28 U.S.C. § 1367.

2.  Venue is proper within this District pursuant to 28 U.S.C. §§1400(a) and 1391(b).

## THE PARTIES

3.  Plaintiff PENSACOLA MOTOR SALES, INC., d/b/a BOB TYLER TOYOTA, INC., is a corporation duly organized and existing under the laws of the State Florida, and has a principal place of business at 7201 N. Pensacola Boulevard, Pensacola, Florida 32505.

4.  Defendant Eastern Shore Toyota, LLC is a limited liability corporation duly organized and existing under the laws of the State of Alabama, and has a principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

5.  Defendant Daphne Automotive, LLC., is a limited liability corporation duly organized and existing under the laws of the State of Alabama, and has a principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

6.  Defendant Daphne Enterprises, Inc., is a corporation duly organized and existing under the laws of the State of Alabama, and has a principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

7.  Defendant Shawn Esfahani is an individual and upon information and belief is a principal with all of the named corporate defendants.  Upon information and belief, Mr. Esfahani can be found at his principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

8.  DOES 1-10 are persons and/or entities that are assisting the Defendants, or otherwise are liable for infringement of Plaintiff's intellectual property rights, either directly or contributorily.  Such DOES may include, but are not limited to: employees or business partners of Defendants, contract workers such as web designers or other persons or entities involved in the registration, use, and/or trafficking of the subject domain names.  Once these Defendants' true identity are known, the Plaintiff will amend this lawsuit and add the JOHN DOE Defendants' true and correct names.

**FACTUAL BACKGROUND**

9.  BOB TYLER TOYOTA is a leader in the automotive sales industry and has been in business since 1997.

10. Since 1997, BOB TYLER TOYOTA has grown to over 200 employees in sales, parts, service, Toyota Certified collision center, administration, detail, and other departments.  As such, BOB TYLER TOYOTA is a major employer in the community.

11. The BOB TYLER TOYOTA way of doing business includes 100% customer satisfaction in all areas.  The company spends a considerable amount of time and money in conducting customer surveys after the sales or service experience is completed after each contact with the dealership.   The customer surveys are just one method in which BOB TYLER TOYOTA protects and polices its image, trademarks, and the goods/services which are offered under such trademarks.

12. Bob Tyler, the founder of BOB TYLER TOYOTA is involved in all areas of the dealership each day.  He is a long-time Pensacola resident with considerable ties to the community.  For instance, Bob Tyler and BOB TYLER TOYOTA are involved in many civic activities which, give back to Pensacola and surrounding communities. Mr. Tyler supports many youth sports leagues, community art activities, and other neighborhood festivals throughout the year.   Many of the staff are also involved in various civic and church activities, and are encouraged by Mr. Tyler to participate in their communities in a number of ways.

13. Automotive sales and repair services (and related goods and services) offered by BOB TYLER TOYOTA have been marketed and sold by BOB TYLER TOYOTA by way of extensive advertising in traditional media outlets as well as online via the Internet.

14. For instance, BOB TYLER TOYOTA has, since at least 1998, owned and maintained the domain http://www.bobtylertoyota.com.  Plaintiff also owns

and operates http://www.bobtylerscion.com. The Internet presence of BOB TYLER TOYOTA is invaluable to the success of BOB TYLER TOYOTA's business. Since long prior to the acts complained of herein, BOB TYLER TOYOTA has maintained an Internet Sales Department which specifically responds to and services customer inquiries that originate via the Internet.

15. The Internet advertising and sales channel has become invaluable to the automotive sales industry. It is estimated that a large percentage of BOB TYLER TOYOTA's sales leads originate from consumer searches of the Internet.

16. All of BOB TYLER TOYOTO's services are advertised with the "BOB TYLER" trademarks. The trademark "BOB TYLER" is prominently affixed to the dealership building and accompanying signs. The trademark is also prominently displayed in connection with all advertising of the BOB TYLER TOYOTA dealership, wherever it may appear.

17. The Plaintiff's trademarks are fully protectable under the common law and the Lanham Act in so much as they have become distinctive through extensive use in United States commerce.

18. Plaintiff's distinctive trademarks which include "BOB TYLER" when applied to the advertising of services signify to the purchaser that the services are rendered from BOB TYLER TOYOTA and are rendered in the highest quality. BOB TYLER TOYOTA takes great pride and care to insure that its services are rendered in the highest standard in the industry. BOB TYLER TOYOTA's

"BOB TYLER" branded services have been widely accepted by the public for over 13 years and are hugely popular as evident by the financial success enjoyed by BOB TYLER TOYOTA.

19. Plaintiff's "BOB TYLER" trademarks are inherently distinctive and have been since Plaintiff's first creation and use of the trademarks in Interstate Commerce at least as early as 1997.

20. It is common for businesses to purchase domains which contain the trademark of their successful products or services in order to facilitate consumers' search for the products or services.   BOB TYLER TOYOTA has an active Internet presence which includes the operation of certain domains which include the "BOB TYLER" trademark, the tracking of Internet traffic to such websites, and generally the promotion of the "BOB TYLER" trademarks in the online marketplace.

21. Plaintiff has created, by either its employees, or by contracted authors original visual and textual content which is displayed at Plaintiff's websites and is utilized for the purpose of marketing Plaintiff's "BOB TYLER" services. Plaintiff, therefore, is the copyright author and claimant of all original content appearing on Plaintiff's websites as well as supporting marketing material such as television commercials, brochures, and the like.

22. Plaintiff advertises its services in a variety of channels including: direct marketing, direct mail print media, radio, television, and via its websites.

23. Since its first offering of its automotive sales services utilizing the "BOB TYLER" trademark, BOB TYLER TOYOTA has expended considerable financial resources in the development and promotion of the trademarks in traditional media and online media.  It is estimated that BOB TYLER TOYOTA has spent millions of dollars in the promotion of the "BOB TYLER" trademark throughout Florida, the surrounding region, and beyond.

24. It follows that through extensive advertising and supporting excellent service, BOB TYLER TOYOTA has, over time, developed substantial goodwill in the "BOB TYLER" trademarks in the minds of the consuming public.

25. Any unauthorized use of the "BOB TYLER" trademarks will and is causing inestimable harm to BOB TYLER TOYOTA.

**THE DEFENDANTS' SCHEME AND INFRINGING CONDUCT**

26. On August 28, 2009, Defendants registered the infringing domains, namely, http://www.bobtylersuzukiquotes.com,      http://www.bobtylerprices.com, http://www.bobtylertotyotaprices.com,      http://www.bobtylerquotes.com, http://www.bobtylertoyotapreowned.com,

http://www.bobtylertoyotainventory.com, These domains include Plaintiff's inherently distinctive trademark "BOB TYLER".  Defendants' mere addition of the descriptive wording "quotes," "prices," "pre-owned," and "inventory"  to the domains does not absolve them of liability under the Anti-Cybersquatting Consumer Protection Act ("ACPA").  The Registrants of the domains registered the domains after Plaintiff's trademark became distinctive.  Based

upon the clear facts surrounding Defendants' activities alleged herein, these Defendants registered the domains in bad faith as that term of art is understood and interpreted under the ACPA. Such bad faith registration was done with the intention to profit from same.

27. Each of the infringing domains, namely http://www.bobtylersuzukiquotes.com, http://www.bobtylerprices.com, http://www.bobtylertotyotaprices.com, http://www.bobtylerquotes.com, http://www.bobtylertoyotapreowned.com,

http://www.bobtylertoyotainventory.com were active immediately after registration. Only recently did the Defendants cause the domains to be temporarily inactive. Upon information and belief, Defendants populated these domains with the infringing content and offers to provide automotive retail services under the "BOB TYLER" trademark with the intent to misdirect Internet traffic to Defendants' competing automotive sales business in a neighboring community.

28. The content found at these websites (prior to their recent and temporary disabling) was a direct and slavish copy of Plaintiff's original visual and textual content.

29. Worse still, on each of these websites Defendants maintained a credit application form which was accessible via a hyperlink. Thus, consumers who mistakenly thought that they were on a website maintained and associated with BOB TYLER TOYOTA were induced to type-in their non-

public/confidential financial information so that Defendants could evaluate their credit-worthiness for consideration of automotive loans. Based upon this, Defendants gained at least two valuable categories of information: (1) Defendants gained private financial information from customers that were deceived into believing they were offering such information to BOB TYLER TOYOTA; and (2) Defendants gained key traffic information of persons interested in purchasing an automobile from Plaintiff. For instance, even the most basic of Internet traffic reports will report information of persons that access the subject domains such as (1) time of access; (2) geographical location of access; (3) time spent on the domains; (4) tracking of where the customer clicked on the website (such information is valuable to determine what information is of most interest to a prospective customer); (5) tracking of whether a particular potential customer returned to the domains; (6) keywords used by the Internet searcher which led them to the subjecting infringing domains/websites; (7) and other key information that would assist marketers in evaluating the effectiveness of their websites and help shape and determine their marketing strategies. In essence, Defendants intentionally and willfully disguised themselves and deceived the public to believe that they were entering into a genuine website that was/is owned, controlled, maintained, or otherwise authorized by BOB TYLER TOYOTA.

30. Upon information and belief, Defendant ESFAHANI is the principal behind all of the corporate Defendants and is the moving force behind the unlawful

trade practices alleged herein.  As the moving force for such unlawful activities, Defendant ESFAHANI is subject to liability for all of the acts complained of herein.

31. Defendants offered their competing automotive sales services with a mark that is identical to Plaintiff's trademark.

32. The services offered by BOB TYLER TOYOTA and Defendants under the "BOB TYLER" trademark are identical.

33. BOB TYLER TOYOTA and the Defendants are direct competitors in the automotive sales arena, both in the online marketplace and geographically.

34. BOB TYLER TOYOTA has priority of use in the United States of the subject trademark.  Defendants' use of the mark is junior and is thus an infringing use.

35. Defendants' use of the trademark is likely to cause consumer confusion. There is not only a likelihood of confusion, but it is highly probable that the public will find Defendants' "BOB TYLER" trademark confusingly similar to Plaintiff's "BOB TYLER" trademark.

36. Defendants are offering their infringing services in an identical trade channel as Plaintiff, namely via Internet sales.

37. Defendants are advertising their infringing services in a manner that is identical to BOB TYLER TOYOTA's advertising, namely via the Internet.

38. Defendants are intentionally seeking to profit from the goodwill associated with BOB TYLER TOYOTA and BOB TYLER TOYOTA's services.  Defendants'

actions constitute willful violations of BOB TYLER TOYOTA's intellectual property rights.  Such intent is exhibited by Defendants' slavish copying of elements of Plaintiff's website and services and Defendant's deceptive credit application as found on the subject websites.

39. BOB TYLER TOYOTA is aware of instances of actual confusion in the marketplace.  While some cases of trademark infringement require close calls in evaluating whether there is a likelihood of confusion, Defendants' activities are a blatant and slavish copying of Plaintiff's trademarks, websites, and manner of doing business.

40. BOB TYLER TOYOTA has been damaged and will continue to suffer actual damages if Defendants' egregious activities are not restrained and punished by this Court.  The fact that Defendants may have temporarily disabled or deactivated the subject domains is of no import.  They must be permanently enjoined to avoid future confusion and damage to BOB TYLER TOYOTA.  To the extent that Defendants will attempt to escape liability by transferring, locking, or otherwise abandoning the subject domains, this Court should still find that violations of the ACPA have occurred in so much as the statute finds liability for "registration, use, and/or trafficking" in domains which contain the distinctive trademark of another with the bad faith intent to profit from same.  There is no safe harbor in the statute under the facts of this case.

41. Defendants have willfully sought to obtain private financial information from potential customers (some of which may have in fact ultimately purchased

automobiles from Defendants) that were fraudulently induced to enter such information within the subject domains.   Since the subject domains contained BOB TYLER TOYOTA's trademark "BOB TYLER" it stands to reason that such consumers believed that they were offering and submitting their private financial information to BOB TYLER TOYOTA.   Such initial interest confusion has caused harm.   Defendants have illegally benefited monetarily from their scheme and other violations of Plaintiff's intellectual property.  Defendants have been unjust enriched by this scheme.

42. Defendants, JOHN DOES 1-10, are persons who contributed to or were otherwise the moving force behind the registration, use, and/or trafficking of the subject domains and the other complained of activities.   Upon information and belief, such other individuals and entities are found in this United States District.

43. Only after demand was sent did Defendants take down the content from the infringing domains and temporarily disable the subject domains.   These actions do not absolve the Defendants from liability since the ACPA finds liability for those who register, use, and/or traffic in domains that contain a distinctive trademark.   The fact that Defendants may have temporarily disabled the content is of no import.   BOB TYLER TOYOTA seeks various forms of relief for damages or statutory damages, an injunction, and transfer of the subject domains and any other domain that Defendants registered which contain Plaintiff's distinctive trademark.    Moreover, BOB TYLER

TOYOTA seeks a remedy for any sales, or other financial benefit obtained by Defendants, as a result of their deceptive use of a credit application on the subject websites.

I.     **UNFAIR COMPETITION/FALSE ADVERTISING UNDER THE LANHAM ACT**

44. BOB TYLER TOYOTA incorporates paragraphs 1 through 43, and brings the following claim for unfair competition, pursuant to 15 U.S.C. §1125, against all Defendants.

45. BOB TYLER TOYOTA owns the exclusive trademark rights to the "BOB TYLER" trademarks.

46. As a direct result of BOB TYLER TOYOTA' longstanding use, sales, advertising, and marketing, the "BOB TYLER" trademarks have acquired secondary and distinctive meaning among the public who have come to identify the "BOB TYLER" trademarks with BOB TYLER TOYOTA and its products and services.

47. Notwithstanding BOB TYLER TOYOTA's well known and prior common law rights in the "BOB TYLER" trademarks, the Defendants have, with actual notice of BOB TYLER TOYOTA's rights, and long after BOB TYLER TOYOTA established its rights in the trademarks adopted and used one or more of the "BOB TYLER" trademarks in conjunction with their sale, distribution, offer for sale, marketing and advertising of their competing services.

48. Defendants have used one or more of the "BOB TYLER" trademarks without authorization from BOB TYLER TOYOTA. Defendants' use of the "BOB

TYLER" trademarks in Florida, and interstate commerce, has caused and will cause a likelihood of confusion, deception and mistake, in that the buying public will conclude that the competing services offered are authorized, sponsored, approved or associated with BOB TYLER TOYOTA.

49. Defendants have utilized one or more of the "BOB TYLER" trademarks in conjunction with the competing and Infringing Services in an effort to delude and confuse the public into believing that the Infringing Services offered by Defendants were approved by, or had been authorized and/or sponsored by BOB TYLER TOYOTA.

50. The Infringing Services will dilute the goodwill and reputation of BOB TYLER TOYOTA.

51. The use of the "BOB TYLER" trademarks in conjunction with the Infringing Services, which Infringing Services offered are of an inferior quality to such services provided by BOB TYLER TOYOTA, will further dilute the good will and reputation of BOB TYLER TOYOTA.

52. The Defendants, by misappropriating and using the "BOB TYLER" trademarks in connection with the Infringing Services, are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their services.  The Defendants have caused such Infringing Services to enter into interstate commerce willfully, with full knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing

that Defendants' Infringing Services are authorized or emanate from BOB TYLER TOYOTA.

53. These acts constitute a violation of §43(a) of The Lanham Act, 15 U.S.C. §1125(a).

54. The Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

55. Said acts of infringement and unfair competition will cause irreparable injury to BOB TYLER TOYOTA if the Defendants are not restrained by the Court from further violation of BOB TYLER TOYOTA' rights, as BOB TYLER TOYOTA has no adequate remedy at law.

56. BOB TYLER TOYOTA has suffered damages as a result of the aforesaid acts.

57. The Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure BOB TYLER TOYOTA and its business, or alternatively, with reckless disregard as to the harm their actions would cause BOB TYLER TOYOTA.

II.   **VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT**

58. BOB TYLER TOYOTA incorporates the allegations set forth in paragraphs 1 through 57 of this Complaint.

59. Defendants have registered, trafficked in, and used in interstate commerce the domains http://www.bobtylersuzukiquotes.com, http://www.bobtylerprices.com, http://www.bobtylertotyotaprices.com, http://www.bobtylerquotes.com,

http://www.bobtylertoyotapreowned.com,

http://www.bobtylertoyotainventory.com ('the infringing domains") without the authorization of BOB TYLER TOYOTA with the bad faith intent of profiting off the "BOB TYLER" trademarks my misleading or deceiving the public into believing that BOB TYLER TOYOTA is associated or affiliated with, or sponsors or endorses Defendants, its products or services and websites offering competing products or services. Such registration, trafficking, and/or use was done after Plaintiff's BOB TYLER trademark became distinctive.

60. The aforesaid actions constitute cyberpiracy in violation of §43(d) of the Trademark Act of 1946, 15 U.S.C. §1125(d).

61. Defendants unauthorized registration and use (and possible trafficking) of the infringing domains has caused, and unless and until restrained, enjoined and transferred to BOB TYLER TOYOTA, will continue to cause irreparable injury to BOB TYLER TOYOTA and to the goodwill associated with its "BOB TYLER" trademarks.  BOB TYLER TOYOTA has no adequate remedy at law.

### III.    VIOLATION OF FLORIDA UNFAIR COMPETITION

62. Plaintiff BOB TYLER TOYOTA repeats and realleges paragraphs 1 through 61 of this Complaint.

63. Plaintiff BOB TYLER TOYOTA has expended significant sums of money in advertising and marketing products featuring its trademarks, and in creating

a consumer demand for such products in Florida and elsewhere in the United States. Consequently, these products have become widely known and accepted.

64. The Defendants have adopted and used one or more of the "BOB TYLER" trademarks in conjunction with their sale, distribution, offer for sale, marketing and advertising of Infringing Services in Florida, thereby passing them off as services authorized or distributed by BOB TYLER TOYOTA.

65. The Defendants have knowingly and willfully appropriated one or more of the "BOB TYLER" trademarks in an effort to create an impression that the Defendants' competing services are sanctioned by BOB TYLER TOYOTA in order to misappropriate all of the goodwill associated with the "BOB TYLER" trademarks.

66. The Defendants' acts, as described above, constitute unfair competition and will, unless enjoined by this Court, result in the destruction and/or dilution of the goodwill of the "BOB TYLER" trademarks and of BOB TYLER TOYOTA's valuable property rights to the unjust enrichment of the Defendants.

67. The Infringing Services which were advertised, marketed, offered for sale and sold by the Defendants were calculated and likely to deceive and mislead the purchasers who paid monies or otherwise offered non-public/confidential financial information in the belief that they originate with or are authorized by BOB TYLER TOYOTA.

68. The continued passing off by the Defendants of such unauthorized services as if such services originated with or were authorized by BOB TYLER TOYOTA, has caused and, unless restrained, will continue to cause serious and irreparable injury to BOB TYLER TOYOTA.

69. BOB TYLER TOYOTA has no adequate remedy at law and is suffering irreparable harm as a result of the aforesaid actions by the Defendants.

70. BOB TYLER TOYOTA has suffered damages as a result of the aforesaid acts.

71. The Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively with the intent to injure BOB TYLER TOYOTA and its business, or alternatively, with reckless disregard as to the harm their actions would cause to BOB TYLER TOYOTA.

### IV.   DILUTION IN VIOLATION OF FLORIDA STATUTE § 495.151

72. BOB TYLER TOYOTA repeats and realleges paragraphs 1 through 71 of this Complaint.

73. The infringing, unauthorized, and unlawful acts of the Defendants as alleged above have, and will continue to have, the effect of diluting the distinctive quality of the "BOB TYLER" trademarks.  Said acts constitute an unlawful dilution of BOB TYLER TOYOTA' rights at common law and under the Florida Anti-Dilution Statute, Fla.Stat. §495.151.

74. The Defendants' commercial exploitation of the "BOB TYLER" trademarks in conjunction with the offering of the Infringing Services will cause confusion

in the marketplace regarding the sponsorship and origin of such services and will tarnish BOB TYLER TOYOTA's reputation in the marketplace.

75. BOB TYLER TOYOTA has no adequate remedy at law and has suffered irreparable harm and damage as a result of the Defendants' acts. BOB TYLER TOYOTA will continue to suffer irreparable harm and damage as a result of Defendants' acts unless injunctive relief is granted as requested.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BOB TYLER TOYOTA demands a Preliminary Injunction, and consistent with that, entry of a judgment against each and every Defendant as follows:

1. Permanent injunctive relief restraining each Defendant, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, from:

a. further infringing the "BOB TYLER" trademarks by distributing, circulating, marketing, offering for sale, advertising, promoting, displaying or otherwise offering any services or products not authorized by BOB TYLER TOYOTA, including but not limited to "automotive retail services" and related goods and services and supporting materials (whether in print or in electronic form) bearing any simulation, reproduction, counterfeit, copy or colorable imitation of any of the "BOB TYLER" trademarks.

b. using any simulation, reproduction, counterfeit, copy or colorable imitation of any of the "BOB TYLER" trademarks in connection with the promotion,

advertisement, display, sale, offer for sale, circulation or distribution of any services not authorized by BOB TYLER TOYOTA in such a fashion as to relate or connect, or tend to relate or connect, such services in any way with BOB TYLER TOYOTA or any services offered for sale, sponsored or approved by, or connected with BOB TYLER TOYOTA.

c.  making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services offered for sale by the Defendants are in any manner associated or connected with Plaintiff BOB TYLER TOYOTA.

d.  engaging in any other activity constituting unfair competition with BOB TYLER TOYOTA, or constituting an infringement of any of the BOB TYLER TOYOTA trademarks or of BOB TYLER TOYOTA's rights in, or to use or to exploit, said trademarks, or constituting any dilution of any of BOB TYLER TOYOTA's names, reputation, or good will;

e.  effecting assignments or transfers, forming new entities or association or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (d);

f.  secreting, destroying altering, removing or otherwise dealing with the unauthorized  Infringing domains or associated goods/services or any books or records which may contain any information relating to the selling, marketing, offering for sale, advertising, promoting or displaying of all

unauthorized services which infringe any of BOB TYLER TOYOTA' "BOB TYLER" trademarks; and

g.  from aiding, abetting, contributing to or otherwise assisting anyone from infringing upon the "BOB TYLER TOYOTA" trademarks.

h.  Directing that Defendants deliver for destruction all unauthorized advertisements relating thereto in their possession or under their control bearing any of the BOB TYLER TOYOTA "BOB TYLER" trademarks or any simulation, reproduction, counterfeit, copy or colorable imitations thereof, and all heat transfers, screens, matrices, and other means of making same.

i.  Directing the Defendants as Registrants of the infringing domains http://www.bobtylersuzukiquotes.com, http://www.bobtylerprices.com, http://www.bobtylertotyotaprices.com, http://www.bobtylerquotes.com, http://www.bobtylertoyotapreowned.com, http://www.bobtylertoyotainventory.com, and other domains later found to be infringing to immediately transfer the domains to Plaintiff's care, and if necessary, directing the Registrar of these domains to assist in the transfer of same.  Directing the Defendants to transfer any other domains which contain Plaintiff's trademark "BOB TYLER" or any domain which includes a term or phrase that is confusingly similar to Plaintiff's "BOB TYLER" trademarks, and if necessary, the Registrar of those domains to assist in the transfer of same.

j.  Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that any products

advertised, marketed, manufactured, sold or otherwise circulated or promoted by Defendants are authorized by BOB TYLER TOYOTA, or related in any way to BOB TYLER TOYOTA' services or products.

k.   That BOB TYLER TOYOTA be awarded from each Defendant, as a result of each Defendant's unlawful registration of domains which include the "BOB TYLER" trademarks, three times each Defendants' profits therefrom, after an accounting, or, in the alternative statutory damages, should BOB TYLER TOYOTA opt for such relief, consisting of One Hundred Thousand Dollars ($100,000.00) for each of the "BOB TYLER" trademarks infringed upon by each Defendant per type of good/service, and to the extent this Court concludes such infringement was willful, One Million Dollars ($1,000,000.00), for each of BOB TYLER TOYOTA's "BOB TYLER" trademarks infringed upon by each of the Defendants per type of good/service..

l.   That BOB TYLER TOYOTA be awarded the statutory maximum for each act of cybersquatting by Defendants, which includes, but is not limited to the statutory maximum per domain of One Hundred Thousand Dollars ($100,000.00) for at least a total of Six Hundred Thousand Dollars ($600,000.00).

m.  That BOB TYLER TOYOTA be awarded the transfer of the domains http://www.bobtylersuzukiquotes.com, http://www.bobtylerprices.com, http://www.bobtylertotyotaprices.com, http://www.bobtylerquotes.com, http://www.bobtylertoyotapreowned.com,

http://www.bobtylertoyotainventory.com, and any other domains which include the "BOB TYLER" trademarks or any other domains that contain any word or phrase that is confusingly similar to the "BOB TYLER" trademarks. That all accompanying traffic reports or other site analytics associated with all such domains be produced and awarded to BOB TYLER TOYOTA.

n.  That BOB TYLER TOYOTA be awarded its reasonable attorneys' fees and investigative fees..

o.  That BOB TYLER TOYOTA be awarded its costs in bringing this action.

p.  That BOB TYLER TOYOTA be awarded punitive damages for the Defendants' willful acts of unfair competition under Florida's common law.

q.  That BOB TYLER TOYOTA have such other and further relief that this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated:   December 28, 2009

Respectfully submitted,

**/s Patrick V. Douglas_____**
Patrick V. Douglas
Florida Bar No. 0068639
John S. Derr
Florida Bar No. 0359025
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
215 South Monroe Street, Suite 510
Tallahassee, FL 32301-1804
Tel.: (850) 412-1042
Fax.: (850) 412-1043