**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF FLORIDA**

PENSACOLA MOTOR SALES, INC.,
a Florida Corporation, d/b/a
BOB TYLER TOYOTA,

       Plaintiff,

v.                                 CASE NO.:  3:09-CV-00571-CIV-RS-MD

EASTERN SHORE TOYOTA, LLC.,
An Alabama Limited Liability Company,
DAPHNE AUTOMOTIVE, LLC.,
An Alabama Limited Liability Company,
DAPHNE ENTERPRISES, INC.,
An Alabama corporation, and
SHAWN ESFAHANI,
An individual,

       Defendants.

_____/

## MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

      Plaintiffs, by and through undersigned counsel, pursuant to Rule 15 of the Federal Rules of Civil Procedure, hereby moves for leave to file a Second Amended Complaint, and in support thereof states as follows:

      On December 28, 2009 the Plaintiff filed its original four (4) count Complaint alleging various violations of state and federal trademark law arising from the Defendants' improper registration and use of domain names including the Plaintiff's distinctive "BOB TYLER" trademark.  (D.E. 1).  Specifically, Plaintiff alleged that the Defendants wrongfully registered and used, in competition with the Plaintiff, the following six (6) domain names:

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com, and

- www.bobtylertoyotainventory.com

<u>Id</u>.

On February 16, 2010, the Plaintiff filed its first Amended Complaint adding a claim for violation of Florida Statute §668.704.  (D.E. 24).

Since that time, Plaintiff conducted discovery by propounding two sets of interrogatories, one set of requests for admissions, and three sets of requests for production.  Specifically, on March 15, 2010 Plaintiff propounded its First Set of Interrogatories including a request that the Defendants "[p]lease identify all domains that you have ever registered and/or used for any purpose."  After requesting an enlargement of time to respond, on April 22, 2010, Defendants provided a list of thousands of domain names, many of which include the famous or distinctive trademarks of third parties.  Of particular concern to the Plaintiff was the discovery that in addition to the already identified domain names including the Plaintiff's distinctive "BOB TYLER" trademark which the Defendants have registered, namely,

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com, and
- www.bobtylertoyotainventory.com,

the Defendants have registered at least eight (8) other domain names which include Plaintiff's trademark.  Specifically, the Plaintiff has identified the following domain names from Defendants' discovery responses:

- www.bobtylerusedsuzuki.com,
- www.bobtylerusedcarquotes.com,
- www.bobtylerusedcars.com,
- www.bobtylerpreowned.com,
- www.bobtylertoyotaquotes.com,
- www.bobtylertoyotausedcars.com,
- www.tyletoyota.com,  and
- www.tylrtoyota.com

<u>See</u> Exhibit A.

Each of these newly discovered domain names includes the Plaintiff's distinctive "BOB TYLER" trademark, and upon information and belief, each was used by the Defendants to compete with the Plaintiff, to create a false association with the plaintiff, to misidentify themselves as another (namely the Plaintiff),  and/or to mislead the public.

Additionally, the new discovery responses and document production reveals that Defendants registered thousands of domain names which incorporate the famous and/or distinctive trademarks of third parties.  This extensive portfolio includes the following domain names:

1. Domain names registered by the Defendants which include the famous or distinctive "YOU TUBE" trademark or common misspellings thereof:
   - www.youtubeeasternshoretoyota.com,
   - www.youtubekia.com,
   - www.youtubenewcars.com,
   - www.youtubenissan.com,
   - www.youtubetoyota.com,
   - www.youtubenewcars.com, (intentionally misspelled)
   - www.bmwutube.com,
   - www.bmwyoutube.com
   - www.freebmwutube.com,
   - www.freehyundaiutube.com,
   - www.freekiautube.com,
   - www.freelexusutube.com,
   - www.freenissanutube.com,
   - www.freetoyotautube.com,
   - www.hyundaiutube.com,
   - www.kiautube.com,
   - www.lexusutube.com,
   - www.mybmwutube.com,
   - www.mylexusutube.com,
   - www.mytoyotautube.com,
   - www.newhyundaiutube.com,
   - www.newkiautube.com,
   - www.newnissanutube.com,
   - www.newtoyotautube.com,
   - www.nissanutube.com,

- www.thehyundaiutube.com,
- www.thenissanutube.com,
- www.thetoyotautube.com,
- www.toyotautube.com,
- www.utubehyundai.com,
- www.utubekia.com,
- www.utubelexus.com,
- www.utubetoyota.com,
- www.esh-youtube.com,
- www.eshyoutube.com,
- www.est-youtube.com,
- www.estyoutube.com,
- www.hk-youtube.com,
- www.hod-youtube.com,
- www.hodyoutube.com,
- www.hondayoutube.com,
- www.kia-youtube.com,
- www.kiayoutube.com,
- www.lexusutube.com, and
- www.lexusyoutube.com.

2. Domain names registered by the Defendants which include the famous or distinctive "YAHOO" trademark:
   - www.yahoonewcars.com, and
   - www.yahoousedvehicles.com.

3. Domain names registered by the Defendants which include the famous or distinctive "ALLEN TURNER" trademark (Allen Turner is a direct competitor of the Defendants):
   - www.allenturnerusedcar.com, and
   - www.allenturnerusedsupercenter.com.

4. Domain names registered by the Defendants which include the famous or distinctive "CARL GREGORY" trademark (Carl Gregory is a direct competitor of the Defendants):
   - www.carlgregory-usedcars.com,
   - www.carlgregory-usedcarsonline.com,
   - www.carlgregory-usedcarstore.com, and
   - www.carlgregoryusedtrucks.com.

5. Domain names registered by the Defendants which include the famous or distinctive "CHUCK STEVENS" trademark (Chuck Stevens is a direct competitor of the Defendants):
   - www.chuckstevensusedcars.com,

6. Domain names registered by the Defendants which include the famous or distinctive "CRAIG'S LIST" trademark or common misspellings thereof:

- www.craigslisttoyotasearch.com,
- www.craigslistusedautos.com,
- www.craigslistusedcarsearch.com,
- www.craigslistvehiclesearch.com, and
- www.criagslistpreowned.com, (intentionally misspelled).

7. Domain names registered by the Defendants which include the famous or distinctive "EBAY" trademark:
   - www.ebayautoinventory.com,
   - www.ebayautoprices.com,
   - www.ebayautoquotes.com,
   - www.ebayautosearch.com,
   - www.ebaypreownedautos.com,
   - www.ebaypreownedinventory.com,
   - www.ebaypreownedprices.com,
   - www.ebaypreownedquotes.com,
   - www.ebaypreownedsearch.com,
   - www.ebayprewonedcarinventory.com,
   - www.ebayusedcarprices.com,
   - www.ebayusedcarquotes.com,
   - www.lexususedebay.com,
   - www.lexusebayprices.com,
   - www.toyotausedebay.com,
   - www.hondaebayprice.com,
   - www.hondaebayprices.com,
   - www.hyundaiebayprice.com,
   - www.toyotaebayprice.com,
   - www.toyotaebayprices.com, and
   - www.usedtoyotaebayprice.com.

8. Domain names registered by the Defendants which include the famous or distinctive "ED VOYLES" trademark (Ed Voyles is a direct competitor of the Defendants):
   - www.edvoylesusedkia.com,

9. Domain names registered by the Defendants which include the famous or distinctive "FACEBOOK" trademark:
   - www.facebookhyundai.com,
   - www.facebookkia.com,
   - www.facebooklexus.com,
   - www.facebooknewcars.com,
   - www.facebooknissan.com,
   - www.facebooktoyota.com,
   - www.facebookusedcars.com,
   - www.freehyundaifacebook.com,

- www.freelexusfacebook.com,
- www.freefacebookhyundai.com,
- www.freefacebooklexus.com,
- www.freefacebooknissan.com,
- www.freenissanfacebooke.com,
- www.kiafacebook.com,
- www.lexusfacebook.com,
- www.myfacebookhyundai.com,
- www.myfacebooklexus.com,
- www.myfacebooknissan.com,
- www.myfacebooktoyota.com,
- www.myhyundaifacebook.com,
- www.mylexusfacebook.com,
- www.mynissanfacebook.com,
- www.mytoyotafacebook.com,
- www.newfacebookhyundai.com,
- www.newfacebooktoyota.com,
- www.newkiafacebook.com,
- www.newnissanfacebook.com,
- www.newtoyotafacebook.com,
- www.thefacebookhyundai.com,
- www.thefacebooklexus.com,
- www.thefacebooknissan.com,
- www.thehyundaifacebook.com,
- www.thekiafacebook.com,
- www.thelexusfacebook.com,
- www.thenissanfacebook.com,
- www.thetoyotafacebook.com,
- www.toyotafacebookonline.com,
- www.hyundairfacebook.com, and
- www.kia-facebook.com.

10. Domain names registered by the Defendants which include the famous or distinctive "GATEWAY" trademark:
   - www.gateway-usedcars.com,
   - www.gatewaybadcredit.com, and
   - www.gatewayusedcars.com.

11. Domain names registered by the Defendants which include the famous or distinctive "GOOGLE" trademark:
   - www.googlenewcars.com, and
   - www.googleusedvehicles.com.

12. Domain names registered by the Defendants which include the famous or distinctive "TWITTER" trademark:
- www.hyundaitwitter.com,
- www.esh-twitter.com,
- www.eshtwitter.com,
- www.est-twitter.com,
- www.esttwitter.com,
- www.hod-twitter.com,
- www.hodtwitter.com,
- www.lexustwitter.com, and
- www.nissan-twitter.com.

13. Domain names registered by the Defendants which include the famous or distinctive "JIM ELLIS" trademark (Jim Ellis is a direct competitor of the Defendants):
- www.jimelliskia.com, and
- www.jimellikia.com.

14. Domain names registered by the Defendants which include the famous or distinctive "KEN BOGGS" trademark (Ken Boggs is a direct competitor of the Defendants):
- www.kenboggsusedcars.com, and
- www.kenbogsusedcars.com.

15. Domain names registered by the Defendants which include the famous or distinctive "MSN" trademark:
- www.msnnewcars.com, and
- www.msnusedcars.com.

16. Domain names registered by the Defendants which include the famous or distinctive "MYSPACE" trademark:
- www.myspacenewcars.com,
- www.eshmyspace.com,
- www.estmyspace.com,
- www.hod-myspace.com,
- www.hondamyspace.com, and
- www.lexusmyspace.com.

17. Domain names registered by the Defendants which include the famous or distinctive "PAY PAL" trademark:
- www.paypalnewcars.com, and
- www.paypalusedcars.com.

18. Domain names registered by the Defendants which include the famous or distinctive "ROB DOLL" trademark (Rob Doll is a direct competitor of the Defendants):
- www.robdoll-nissan.com,
- www.robdoll-nissanonline.com,

- www.robdoll-nissanstore.com,
- www.robdoll-toyota.com,
- www.robdollbadcredit.com,
- www.robdollbestpriceusedcars.com,
- www.robdollnewnissanprice.com,
- www.robdollnissanquote.com,
- www.robdollusedcars.com,
- www.robdollusednissanprice.com,
- www.robdollusednissanpriceonline.com,
- www.robdollusednissanpricestore.com, and
- www.robdollusedtrucks.com.

19. Domain names registered by the Defendants which include the famous or distinctive "SANDY SANSING" trademark (Sandy Sansing is a direct competitor of the Defendants):
- www.sandysansingbadcredit.com,
- www.sandysansingbestprice.com,
- www.sandysansingnissanbestprice.com,
- www.sandysansingnissanbestquote.com,
- www.sandysansingnissanusedcars.com,
- www.sandysansingusedcars.com, and
- www.sandysansingusednissans.com.

20. Domain names registered by the Defendants which include the famous or distinctive "CHRIS MYERS" trademark (Chris Myers is a direct competitor of the Defendants):
- www.chrimeirs.com, (intentionally misspelled)
- www.chrismiers.com, (intentionally misspelled)
- www.chrismiersautomall.com, (intentionally misspelled)
- www.chrismiersautomotive.com, (intentionally misspelled)
- www.chrismyersautomalleasternshore.com,
- www.chrismyerseasternshore.com, and
- www.chrismyersofeasternshore.com.

21. Domain names registered by the Defendants which include the famous or distinctive "JAY" trademark (Jay Automotive Group is a direct competitor of the Defendants):
- www.jaytoyota.com,
- www.jay-toyota.com,
- www.jaymazdausedcars.com,
- www.jayscionunsedcars.com,
- www.jaytoyotabadcredit.com,
- www.jaytoyotabestpriceusedcars.com,
- www.jaytoyotabestpriceusedtrucks.com,
- www.jaytoyotaprice.com,
- www.jaytoyotapriceonline.com,

- www.jaytoyotaquote.com,
- www.jaytoyotausedcars.com, and
- www.jaytoyotausedtrucks.com.

22. Domain names registered by the Defendants which include the famous or distinctive "JOHN MARAZZI" trademark (John Marazzi is a direct competitor of the Defendants):
   - www.marazziautomall.com,
   - www.marazziinfinitey.com,
   - www.marazziinfiniti.com,
   - www.marazziluxurycars.com,
   - www.marazzitoyota.com, and
   - www.marazziusedcars.com.

23. Domain names registered by the Defendants which include the famous or distinctive "PALMER'S TOYOTA SUPERSTORE" trademark (Palmer's Toyota Superstore is a direct competitor of the Defendants):
   - www.palmerspreowned.com,
   - www.palmerstoyotapreowned.com,
   - www.palmerstoyotausedcars.com,
   - www.palmersusedcars.com,
   - www.palmerstoyota.com, and
   - www.palmetoyota.com (intentionally misspelled).

24. Domain names registered by the Defendants which include the famous or distinctive "REINHARDT MOTORS" trademark (Reinhardt Motors is a direct competitor of the Defendants):
   - www.reinhardtioyotausedcars.com (intentionally misspelled).

25. Domain names registered by the Defendants which include the famous or distinctive "SPRINGHILL AUTOMOTIVE" trademark (Springhill Automotive, Inc. is a direct competitor of the Defendants):
   - www.springhillpreowned.com,
   - www.springhilltoyotapreowned.com,
   - www.springhilltoyotausedcars.com, and
   - www.springhillusedcars-toyota.com.

26. Domain names registered by the Defendants which include the famous or distinctive "TAMERON AUTOMOTIVE GROUP" trademark (Tameron Automotive Group is a direct competitor of the Defendants):
   - www.tameronhondausedcars.com, and
   - www.tameronusedcars.com.

27. Domain names registered by the Defendants which include the famous or distinctive "TREADWELL" trademark (Treadwell is a direct competitor of the Defendants):
   - www.treadwellusedcars.com.

28. Domain names registered by the Defendants which include the famous or distinctive "ATLANTIC CLASSIC CARS" trademark (Atlantic Classic Cars is a direct competitor of the Defendants):

- www.usedcarsatlanticclassiccars.com.

29. Domain names registered by the Defendants which include the famous or distinctive "COASTAL AUTOMOTIVE" trademark (Coastal Automotive is a direct competitor of the Defendants):

- www.usedcarscoastalford.com.

30. Domain names registered by the Defendants which include the famous or distinctive "DEAN MCCRARY" trademark (Dean McCrary is a direct competitor of the Defendants):

- www.usedcarsdeanmccrary.com.

It appears from Plaintiff's initial review of the domain names disclosed in discovery that the Defendants have registered at least two hundred ten (210) domain names which include the trademarks of others in addition to the twelve (12) "BOB TYLER" domain names registered by the Defendants.  Hundreds of the domain names in the Defendants' domain name portfolio also include the trademarks of car manufacturers.  While Defendants may sell cars, they most likely do not have authority to register those domain names.  These facts go to the heart of at least Plaintiff's claim for violation of the Anticybersquatting Consumer Protection Act ("ACPA") claim, and are also relevant to Plaintiff's other claims.  Thus, Plaintiff seeks leave to amend it complaint, and to file the attached Second Amended Complaint.  See Exhibit B.

Also, in response to Plaintiff's First Set of Requests for Admissions, the Defendants admitted to "purchas[ing] Internet AdWords and/or Key Words which include Plaintiff's "BOB TYLER" trademark from search engine providers including, but not limited to, *Google*, *Yahoo*, and others in order to drive traffic to [their] own website(s) offering goods and services which compete with the goods and services offered by the Plaintiff."  Defendants use of the "BOB TYLER" trademark as an Internet keyword is actionable, Plaintiffs were not previously aware of

Defendants' infringing use, and, thus, Plaintiff's proposed Second Amended Complaint includes a claim for trademark infringement of Plaintiff's "BOB TYLER" trademark (in addition to the ACPA claim) associated with Defendant's use of the same as an Internet keyword.  See North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211 (11th Cir. 2008); Punch Clock, Inc. v. Smart Software Development, 553 F.Supp.2d 1353 (S.Dist. Fla. 2008); and Rescuecom Corp v. Computer Trouhbleshooters USA, Inc., 464 F.Supp.2d 1263 (N.Dist. Ga. 2005).

In addition to the above, Defendants' discovery responses have provided information to identify two of the possible "Doe" Defendants listed in the first Amended Complaint. Specifically, Plaintiff has identified MJMI Internet, LLC and Advanced Dealer Systems as entities which contributed to the acts of the other Defendants complained of in the Complaint by providing advice, assistance and technical support with regard to the registration of the complained of domain names and Internet key words.

## MEMORANDUM OF LAW

Under Rule 15(a), courts must freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a)(2); Spanish Broadcasting System of Fla. v. Clear Channel Communications, Inc., 376 F.3d 1065, 1071 (11th Cir. 2004); and McKinley v. Kaplan, 177 F.3d 1253, 1258 (11th Cir. 1999).  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given'."  McKinley, 177 F.3d at 1258 (quoting Foman v. Davis, 371 U.S. 178, 182, (1962)), see also Technical Resources Servs., Inc. v. Dornier Medical Sys., Inc., 134 F.3d 1458, 1463 (11th

Cir. 1998).  "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Courts have interpreted the language in Rule 15(a) as setting forth a "liberal policy of permitting amendments to ensure the determination of claims on their merits."  Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (quoting Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)).  The purpose of the Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982).  In Foman the Supreme Court held:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)); see also Duncan v. Manager, Dep't of Safety, 397 F.3d 1300, 1315 (10th Cir. 2005); Frank v. U.S. West, 3 F.3d 1357, 1365 (10th Cir. 1993); Tillery v. Darby-Rogers Co., 2006 WL 2735162 (M.D. Fla. 2006).

The amendment sought would not be futile.  The inclusion of the newly discovered "BOB TYLER" domain names goes directly towards the statutory damages which Plaintiff will be entitled to under the ACPA.  See 15 U.S.C. §1117 (allowing a plaintiff so seek statutory damages of "not less than $1,000 and not more than $100,000 per domain name" for violation of the ACPA); see also Kiva Kitchen & Bath, Inc. v. capital Distributing, Inc., 319 FedAppx. 316 (5th Cir. 2009)(affirming district court's award of $100,00 per domain name, plus attorneys' fees);  Citigroup, Inc. v. Shui, 611 F.Supp.2d 507, 513 (E.D.Va. 2009)(awarding $100,000 per

domain name plus attorneys' fees); Graduate Mgmt. Admission Council v. Raju, 267 F.Supp.2d 505, 512-13 (E.D.va. 2003)(awarding $100,000 per domain name); and Verizon California, Inc. v. Onlinenic, Inc., 2008 WL 5352022 (N.D. Cal. 2008)(awarding $33.15 million in statutory ACPA damages).

Similarly, the inclusion of the domain names registered by the Defendants that include the distinctive or famous trademarks of others is relevant to a finding that the Defendants have acted in bad faith.  See 15 U.S.C. §1125(d)(1)(B)(VIII)(listing "the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names . . . without regard to the goods or services of the parties" as one of the factors to be considered in an analysis of bad faith under the ACPA).

Thus, the facts sought to be included in the proposed Second Amended Complaint are relevant to the action and amendment would not be futile.

Plaintiff has not delayed in seeking this amendment.  Rather, discovery only opened in this matter on March 1, 2010.  (D.E. 32).  Plaintiff began propounding discovery on March 14, 2010, and Plaintiff only discovered the newly alleged facts after reviewing Defendants' discovery responses served by U.S. Mail on April 22, 2010.

This case is still in its relative infancy.  Trial is five (5) months away, discovery does not close until July 15, 2010, and the dispositive motion deadline is not until July 29, 2010.  (D.E. 34).  Thus, the Defendants will not be prejudiced by the instant amendment.  The Court should be guided by the Tillery case in its review of the timeliness of this request.  Tillery, 2006 WL 2735162.

In <u>Tillery</u>, the Court granted the plaintiff's motion for leave to file an amended complaint with two (2) additional claims and an additional defendant approximately two (2) months after the close of the discovery and during the pendency of a motion for summary judgment.  <u>Id</u>. While the defendants therein argued that plaintiffs unduly delayed in seeking to amend their pleadings and that such leave would be unduly prejudicial, the court held that the plaintiffs were not engaged in undue delay because they "were not aware of the facts surrounding [the new count] until taking depositions during discovery."  <u>Id</u>.  Further, the court held that any prejudice could be cured by allowing them to conduct further discovery.  Certainly, if amendment was permissible in the <u>Tillery</u> case, it should be permissible in the instant circumstances.

Based on the above, Plaintiff asserts that good cause has been shown for permitting the Plaintiff to file the attached Second Amended Complaint.

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order granting Plaintiff leave to amend its pleading and that the Court adopt the attached Second Amended Complaint as the operative pleading.

Dated: May 17, 2010                     Respectfully submitted:

By:  _s/FRANK HERRERA__
Frank Herrera
Florida Bar No. 494801
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
9300 South Dadeland Boulevard,
Fourth Floor
Miami, Florida 33156
Tel.: (305) 670-1101
Fax.: (305) 670-1164
fherrera@qpwblaw.com
**-and-**
Patrick V. Douglas, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
215 S. Monroe Street, Suite 510
Tallahassee, Florida  32301-1804
Telephone: (850) 412-1042

Facsimile: (850) 412-1043
Tel.: (305) 670-1101
Fax.: (305) 670-1164
pdouglas@qpwblaw.com
**Attorneys for the Plaintiffs**

## CERTIFICATE OF RULE 7.1(B) CONFERENCE

I HEREBY CERTIFY that on May 14, 2010 counsel for the Plaintiff conferred, by email, with counsel for the Defendants, J. Nixon Daniel, III, Esq., concerning the relief sought in this Motion, and that Mr. Daniel indicated, by response email on May 16, 2010 that the Defendans would not agree to the relief sought in this Motion.

By: _s/FRANK HERRERA__
Frank Herrera

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy hereof has been mailed on May 17, 2010, to**:**

**J. Nixon Daniel, III, Esq.,** Beggs & Lane, RLLP, Post Office Box 12950. 501 Commendencia Street, Pensacola, FL  32591-2950.

By: _s/FRANK HERRERA__
Frank Herrera

15

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF FLORIDA**

PENSACOLA MOTOR SALES, INC.,
a Florida Corporation, d/b/a
BOB TYLER TOYOTA,

      Plaintiff,

v.                           CASE NO.:  3:09-CV-00571-CIV-RS-MD

EASTERN SHORE TOYOTA, LLC.,
An Alabama Limited Liability Company,
DAPHNE AUTOMOTIVE, LLC.,
An Alabama Limited Liability Company,
DAPHNE ENTERPRISES, INC.,
An Alabama corporation, and
SHAWN ESFAHANI,
An individual,

      Defendants.
_____/

## ORDER

      THIS CAUSE came before the Court on Plaintiff's Motion For Leave to File a Second

Amended Complaint, filed on May 17, 2010 [D.E. __]. Upon review of this motion, and for good

cause shown, it is hereby:

      ORDERED that Plaintiff's motion is GRANTED.  The Second Amended Complaint

attached to Plaintiff's Motion is hereby incorporated as the operative pleading in this action.

Defendants shall have fourteen days from entry of this Order to respond to the Second Amended

Complaint.

      DONE AND ORDERED in Chambers, this __ day of _____, 2010.


                           _____

                           United States District Judge

# EXHIBIT A

| Domain | Date | Status |
|---|---|---|
| BIRMINGHAMTOYOTASALES.COM | 9/19/2014 | Active - Locked |
| BMW-COLUMBUS.COM | 9/21/2011 | Active - Locked |
| BMWOFCOLUMBUSUSEDCARS.COM | 9/21/2011 | Active - Locked |
| BMWOFEASTERNSHORE.COM | 12/29/2009 | Active - Locked |
| BMWPREOWNEDPRICES.COM | 8/18/2011 | Active - Locked |
| BMWUTUBE.COM | 10/11/2014 | Active - Locked |
| BOBTYLERPREOWNED.COM | 8/27/2011 | Active - Locked |
| BOBTYLERPRICES.COM | 8/27/2011 | Active - Locked |
| BOBTYLERSUZUKIQUOTES.COM | 8/27/2011 | Active - Locked |
| BOBTYLERTOYOTAINVENTORY.COM | 8/27/2011 | Active - Locked |
| BOBTYLERTOYOTAPREOWNED.COM | 8/27/2011 | Active - Locked |
| BOBTYLERTOYOTAPRICES.COM | 8/27/2011 | Active - Locked |
| BOBTYLERTOYOTAQUOTES.COM | 8/27/2011 | Active - Locked |
| BOBTYLERTOYOTAUSEDCARS.COM | 7/23/2011 | Active - Locked |
| BOBTYLERUSEDCARQUOTES.COM | 8/27/2011 | Active - Locked |
| BOBTYLERUSEDCARS.COM | 7/23/2011 | Active - Locked |
| BOBTYLERUSEDSUZUKI.COM | 9/11/2011 | Active - Locked |
| BONITASPRINGSAUTOMALL.COM | 7/31/2010 | Active - Locked |

| Domain | Date | Status |
|---|---|---|
| TUNDRAPRICE.ORG | 8/27/2014 | Active - Locked |
| TUNDRAQUOTE.COM | 8/27/2011 | Active - Locked |
| TUSACALOOSAHYUNDAISALES.COM | 9/19/2014 | Active - Locked |
| TUSCALOOSAHONDASALES.COM | 9/19/2014 | Active - Locked |
| TUSCALOOSAMAZDASALES.COM | 9/19/2014 | Active - Locked |
| TUSCALOOSANISSANSALES.COM | 9/19/2014 | Active - Locked |
| TUSCALOOSATOYOTASALES.COM | 9/19/2014 | Active - Locked |
| TUSCALOOSATOYOTAUSEDCAR.COM | 9/19/2014 | Active - Locked |
| TUSCALOOSATOYOTAUSEDCARS.COM | 7/23/2011 | Active - Locked |
| TUSCONPRICE.COM | 7/30/2011 | Active - Locked |
| TYLETOYOTA.COM | 12/22/2009 | Active - Locked |
| TYLRTOYOTA.COM | 12/22/2009 | Active - Locked |
| USED4RUNNERPRICE.COM | 9/13/2011 | Active - Locked |
| USEDACCORDPRICE.COM | 9/2/2011 | Active - Locked |
| USEDACCORDSFORLESS.COM | 8/18/2011 | Active - Locked |
| USEDACURAONEPRICE.COM | 9/11/2011 | Active - Locked |
| USEDACURAONLINE.COM | 8/10/2011 | Active - Locked |
| USEDACURAPRICE.COM | 8/10/2011 | Active - Locked |

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE NORTHERN DISTRICT OF FLORIDA**

PENSACOLA MOTOR SALES, INC.,
a Florida Corporation, d/b/a
BOB TYLER TOYOTA,

        Plaintiff,

v.                                    CASE NO.:  3:09-CV-00571-CIV-RS-MD

EASTERN SHORE TOYOTA, LLC.,
An Alabama Limited Liability Company,
DAPHNE AUTOMOTIVE, LLC.,
An Alabama Limited Liability Company,
DAPHNE ENTERPRISES, INC.,
An Alabama corporation,
SHAWN ESFAHANI,
An individual,
ADVANCED DEALER SYSTEMS
A Texas corporation,
MJMI INTERNET, LLC,
A New Jersey limited liability company,
DOES 3-10,

        Defendants.
_____/

## SECOND AMENDED COMPLAINT

       COMES NOW, Plaintiff, Pensacola Motor Sales, Inc., ("Plaintiff" or "BOB TYLER") by

and through its attorneys hereby files this, its Second Amendment Complaint (as a matter of

right) against Defendants Eastern Shore Toyota, LLC. ("EASTERN SHORE"), Daphne

Automotive, LLC. ("DAPHNE AUTOMOTIVE"), Daphne Enterprises, Inc. ("DAPHNE

ENTERPRISES"), Shawn Esfahani, ("ESFAHANI"), ADVANCED DEALER SYSTEMS,

MJMI INTERNET, LLC, and Does 3-10 for their blatant cybersquatting of Plaintiff's Distinctive

Trademark and related infringing and deceptive activities. And as support for this Complaint,

Plaintiff offers the following allegations:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as the Plaintiff's cause of action arises under The Federal Trademark Act ("The Lanham Act of 1946"), 15 U.S.C. § 1051 et. seq. Further, this Court has jurisdiction over the Plaintiff's pendent and common law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper within this District pursuant to 28 U.S.C. §§ 1400(a) and 1391(b).

3. Personal jurisdiction is proper in so much as: (a) Defendants have conceded personal jurisdiction by filing their Answer [D.E. 7]; (b) Defendants actively conduct business in this District; and (c) Florida Statute § 668.704(6) finds personal jurisdiction proper.

## THE PARTIES

4. Plaintiff Pensacola Motor Sales, Inc., d/b/a Bob Tyler Toyota, Inc., is a corporation duly organized and existing under the laws of the State Florida, and has a principal place of business at 7201 N. Pensacola Boulevard, Pensacola, Florida 32505.

5. Defendant Eastern Shore Toyota, LLC is a limited liability corporation duly organized and existing under the laws of the State of Alabama, and has a principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

6. Defendant Daphne Automotive, LLC., is a limited liability corporation duly organized and existing under the laws of the State of Alabama, and has a principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

7. Defendant Daphne Enterprises, Inc., is a corporation duly organized and existing under the laws of the State of Alabama, and has a principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

8.  Defendant Shawn Esfahani is an individual and upon information and belief is a principal with all of the named corporate defendants. Upon information and belief, Mr. Esfahani can be found at his principal place of business at 29732 Frederick Blvd., Daphne, Alabama 36526.

9.  Defendant Advanced Dealer Systems is, upon information and belief, a Texas entity, formerly named as a "Doe" defendant in this action who upon information and belief contributed to the acts of the other Defendants complained of herein by providing advice, assistance and technical support with regard to the registration of the complained of domain names and Internet key words.

10. Defendant MJMI Internet, LLC is, upon information and belief, a New Jersey limited liability company, formerly named as a "Doe" defendant in this action who upon information and belief contributed to the acts of the other Defendants complained of herein by providing advice, assistance and technical support with regard to the registration of the complained of domain names and Internet key words.

11. DOES 1-10 are persons and/or entities that are assisting the Defendants, or otherwise are liable for infringement of Plaintiff's intellectual property rights, either directly or contributorily. Such DOES may include, but are not limited to: employees or business partners of Defendants, contract workers such as web designers or other persons or entities involved in the registration, use, and/or trafficking of the subject domain names. Once these Defendants' true identities are known, the Plaintiff will amend this lawsuit and add the JOHN DOE Defendants' true and correct names.

## FACTUAL BACKGROUND

12. BOB TYLER TOYOTA is a leader in the automotive sales industry and has been in business since 1997.

13. Since 1997, BOB TYLER TOYOTA has grown to over 200 employees in sales, parts, service, Toyota Certified collision center, administration, detail, and other departments. As such, BOB TYLER TOYOTA is a major employer in the community.

14. The BOB TYLER TOYOTA way of doing business includes 100% customer satisfaction in all areas. The company spends a considerable amount of time and money in conducting customer surveys after the sales or service experience is completed after each contact with the dealership. The customer surveys are just one method in which BOB TYLER TOYOTA protects and polices its image, trademarks, and the goods/services which are offered under such trademarks.

15. Bob Tyler, the founder of BOB TYLER TOYOTA is involved in all areas of the dealership each day. He is a long-time Pensacola resident with considerable ties to the community. For instance, Bob Tyler and BOB TYLER TOYOTA are involved in many civic activities which, give back to Pensacola and surrounding communities. Mr. Tyler supports many youth sports leagues, community art activities, and other neighborhood festivals throughout the year. Many of the staff are also involved in various civic and church activities, and are encouraged by Mr. Tyler to participate in their communities in a number of ways.

16. Automotive sales and repair services (and related goods and services) offered by BOB TYLER TOYOTA have been marketed and sold by BOB TYLER TOYOTA by way of extensive advertising in traditional media outlets as well as online via the Internet.

17. For instance, BOB TYLER TOYOTA has, since at least 1998, owned and maintained the domain http://www.bobtylertoyota.com. Plaintiff also owns and operates http://www.bobtylerscion.com. The Internet presence of BOB TYLER TOYOTA is invaluable to the success of BOB TYLER TOYOTA's business. Since long prior to the acts complained of herein, BOB TYLER TOYOTA has maintained an Internet Sales Department which specifically responds to and services customer inquiries that originate via the Internet.

18. The Internet advertising and sales channel has become invaluable to the automotive sales industry. It is estimated that a large percentage of BOB TYLER TOYOTA's sales leads originate from consumer searches of the Internet.

19. All of BOB TYLER TOYOTA's services are advertised with the "BOB TYLER" trademarks. The trademark "BOB TYLER" is prominently affixed to the dealership building and accompanying signs. The trademark is also prominently displayed in connection with all advertising of the BOB TYLER TOYOTA dealership, wherever it may appear.

20. The Plaintiff's trademarks are fully protectable under the common law and the Lanham Act insomuch as they have become distinctive through extensive use in United States commerce.

21. Plaintiff is the owner of United States Federal Trademark Application Serial No. 77/959,053 for "BOB TYLER" for use in connection with automobile dealerships.

22. Plaintiff's distinctive trademarks which include "BOB TYLER" when applied to the advertising of services signify to the purchaser that the services are rendered from BOB TYLER TOYOTA and are rendered in the highest quality. BOB TYLER TOYOTA takes

great pride and care to insure that its services are rendered in the highest standard in the industry. BOB TYLER TOYOTA's "BOB TYLER" branded services have been widely accepted by the public for over 13 years and are hugely popular as evident by the financial success enjoyed by BOB TYLER TOYOTA.

23. Plaintiff's "BOB TYLER" trademarks are inherently distinctive and have been since Plaintiff's first creation and use of the trademarks in Interstate Commerce at least as early as 1997.

24. It is common for businesses to purchase domains which contain the trademark of their successful products or services in order to facilitate consumers' search for the products or services. BOB TYLER TOYOTA has an active Internet presence which includes the operation of certain domains which include the "BOB TYLER" trademark, the tracking of Internet traffic to such websites, and generally the promotion of the "BOB TYLER" trademarks in the online marketplace.

25. Plaintiff has created, by either its employees or by contracted authors, original visual and textual content which is displayed at Plaintiff's websites and is utilized for the purpose of marketing Plaintiff's "BOB TYLER" services. Plaintiff, therefore, is the copyright author and claimant of all original content appearing on Plaintiff's websites as well as supporting marketing material such as television commercials, brochures, and the like.

26. Plaintiff advertises its services in a variety of channels including: direct marketing, direct mail print media, radio, television, and via its websites.

27. Since its first offering of its automotive sales services utilizing the "BOB TYLER" trademark, BOB TYLER TOYOTA has expended considerable financial resources in the development and promotion of the trademarks in traditional media and online media. It is

estimated that BOB TYLER TOYOTA has spent millions of dollars in the promotion of the "BOB TYLER" trademark throughout Florida, the surrounding region, and beyond.

28. It follows that through extensive advertising and supporting excellent service, BOB TYLER TOYOTA has, over time, developed substantial goodwill in the "BOB TYLER" trademarks in the minds of the consuming public.

29. Any unauthorized use of the "BOB TYLER" trademarks will and is causing inestimable harm to BOB TYLER TOYOTA.

## THE DEFENDANTS' SCHEME AND INFRINGING CONDUCT

30. On or about August 28, 2009, Defendants registered the infringing domains, namely:

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com,
- www.bobtylertoyotainventory.com,
- www.bobtylerusedsuzuki.com,
- www.bobtylerusedcarquotes.com,
- www.bobtylerusedcars.com,
- www.bobtylerpreowned.com,
- www.bobtylertoyotaquotes.com,
- www.bobtylertoyotausedcars.com,
- www.tyletoyota.com, and
- www.tylrtoyota.com

31. These domains include Plaintiff's inherently distinctive trademark "BOB TYLER". Defendants' mere addition of the descriptive wording "quotes," "prices," "pre-owned," "inventory," and/or "used cars" to the domains does not absolve them of liability under the Anti-Cybersquatting Consumer Protection Act ("ACPA"). The Registrants of the domains registered the domains after Plaintiff's trademark became distinctive. Based upon the clear facts surrounding Defendants' activities alleged herein, these Defendants

registered the domains in bad faith as that term of art is understood and interpreted under

the ACPA. Such bad faith registration was done with the intention to profit from same.

32. Each of the infringing domains, namely,

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com,
- www.bobtylertoyotainventory.com,
- www.bobtylerusedsuzuki.com,
- www.bobtylerusedcarquotes.com,
- www.bobtylerusedcars.com,
- www.bobtylerpreowned.com,
- www.bobtylertoyotaquotes.com,
- www.bobtylertoyotausedcars.com,
- www.tyletoyota.com, and
- www.tylrtoyota.com

were active immediately after registration. Only recently did the Defendants cause the

domains to be inactive. Upon information and belief, Defendants populated these

domains with the infringing content and offers to provide automotive retail services under

the "BOB TYLER" trademark with the intent to misdirect Internet traffic to Defendants'

competing automotive sales business in a neighboring community.

33. The content found at these websites (prior to their recent disabling) contained Plaintiff's

identifying information or otherwise contained content (and domain names) that were

Defendants' attempt to represent themselves directly, or by implication, to be Plaintiff.

Such false and fraudulent representations were without the authority or approval of

Plaintiff.

34. Worse still, on each of these websites Defendants maintained a credit application form

which was accessible via a hyperlink. The domain names and websites were set up to

induce, request, or solicit residents of this state to provide identifying information.

Consumers who mistakenly thought that they were on a website maintained and associated with BOB TYLER TOYOTA were induced to type-in their non-public/confidential financial information so that Defendants could evaluate their credit-worthiness for consideration of automotive loans. Based upon this, Defendants gained, or otherwise had the ability to gain, at least two valuable categories of information: (1) private financial information from customers that were deceived (or could be deceived) into believing they were offering such information to BOB TYLER TOYOTA; and (2) key traffic information of persons interested in purchasing an automobile from Plaintiff. For instance, even the most basic of Internet traffic reports will report information of persons that access the subject domains such as (1) time of access; (2) geographical location of access; (3) time spent on the domains; (4) tracking of where the customer clicked on the website (such information is valuable to determine what information is of most interest to a prospective customer); (5) tracking of whether a particular potential customer returned to the domains; (6) keywords used by the Internet searcher which led them to the subjecting infringing domains/websites; (7) and other key information that would assist marketers in evaluating the effectiveness of their websites and help shape and determine their marketing strategies. In essence, Defendants intentionally and willfully disguised themselves and deceived the public to believe that they were entering into a genuine website that was/is owned, controlled, maintained, or otherwise authorized by BOB TYLER TOYOTA.

35. Upon information and belief, Defendant ESFAHANI is the principal behind all of the corporate Defendants and is the moving force behind the unlawful trade practices alleged

herein. As the moving force for such unlawful activities, Defendant ESFAHANI is subject to liability for all of the acts complained of herein.

36. Defendants offered their competing automotive sales services with a mark that is identical to Plaintiff's trademark.

37. Subsequent to Plaintiff's use of its distinctive "BOB TYLER" trademark, Defendants purchased Internet keywords which include Plaintiff's "BOB TYLER" trademark from search engine providers including, but not limited to *Google*, *Yahoo*, and others in order to drive traffic to their own website(s) offering goods and services which compete with the goods and services offered by the Plaintiff.

38. The services offered by BOB TYLER TOYOTA and Defendants under the "BOB TYLER" trademark are identical.

39. BOB TYLER TOYOTA and the Defendants are direct competitors in the automotive sales arena, both in the online marketplace and geographically.

40. BOB TYLER TOYOTA has priority of use in the United States of the subject trademark. Defendants' use of the mark is junior and is thus an infringing use.

41. Defendants' use of the trademark is likely to cause consumer confusion. There is not only a likelihood of confusion, but it is highly probable that the public will find Defendants' "BOB TYLER" trademark confusingly similar to Plaintiff's "BOB TYLER" trademark.

42. Defendants are offering their infringing services in an identical trade channel as Plaintiff, namely via Internet sales.

43. Defendants are advertising their infringing services in a manner that is identical to BOB TYLER TOYOTA's advertising, namely via the Internet.

44. Defendants are intentionally seeking to profit from the goodwill associated with BOB TYLER TOYOTA and BOB TYLER TOYOTA's services. Defendants' actions constitute willful violations of BOB TYLER TOYOTA's intellectual property rights. Such intent is exhibited by Defendants' slavish copying of elements of Plaintiff's website and services and Defendant's deceptive credit application as found on the subject websites.

45. BOB TYLER TOYOTA is aware of instances of actual confusion in the marketplace. While some cases of trademark infringement require close calls in evaluating whether there is a likelihood of confusion, Defendants' activities are a blatant and slavish copying of Plaintiff's trademarks, websites, and manner of doing business.

46. BOB TYLER TOYOTA has been damaged and will continue to suffer actual damages if Defendants' egregious activities are not restrained and punished by this Court. The fact that Defendants may have temporarily disabled or deactivated the subject domains is of no import. They must be permanently enjoined to avoid future confusion and damage to BOB TYLER TOYOTA. To the extent that Defendants will attempt to escape liability by transferring, locking, or otherwise abandoning the subject domains, this Court should still find that violations of the ACPA have occurred insomuch as the statute finds liability for "registration, use, and/or trafficking" in domains which contain the distinctive trademark of another with the bad faith intent to profit from same. There is no safe harbor in the statute under the facts of this case.

47. Defendants have willfully sought to obtain private financial information from potential customers (some of which may have in fact ultimately purchased automobiles from Defendants) that were fraudulently induced to enter such information within the subject

domains. Since the subject domains contained BOB TYLER TOYOTA's trademark "BOB TYLER" it stands to reason that such consumers believed that they were offering and submitting their private financial information to BOB TYLER TOYOTA. Such initial interest confusion has caused harm. Defendants have illegally benefited monetarily from their scheme and other violations of Plaintiff's intellectual property. Defendants have been unjustly enriched by this scheme.

48. Defendants, JOHN DOES 1-10, are persons who contributed to or were otherwise the moving force behind the registration, use, and/or trafficking of the subject domains and the other complained of activities. Upon information and belief, such other individuals and entities are found in this United States District.

49. Only after demand was sent did Defendants take down the content from the infringing domains and temporarily disable the subject domains. These actions do not absolve the Defendants from liability since the ACPA finds liability for those who register, use, and/or traffic in domains that contain a distinctive trademark. The fact that Defendants may have temporarily disabled the content is of no import. BOB TYLER TOYOTA seeks various forms of relief for damages or statutory damages, an injunction, and transfer of the subject domains and any other domain that Defendants registered which contain Plaintiff's distinctive trademark. Moreover, BOB TYLER TOYOTA seeks a remedy for any sales, or other financial benefit obtained by Defendants, as a result of their deceptive use of a credit application on the subject websites.

## I. FALSE ADVERTISING UNDER THE LANHAM ACT

50. BOB TYLER TOYOTA incorporates paragraphs 1 through 49, and brings the following claim for unfair competition, pursuant to 15 U.S.C. §1125, against all Defendants.

12

51. BOB TYLER TOYOTA owns the exclusive trademark rights to the "BOB TYLER" trademarks.

52. As a direct result of BOB TYLER TOYOTA' longstanding use, sales, advertising, and marketing, the "BOB TYLER" trademarks have acquired secondary and distinctive meaning among the public who have come to identify the "BOB TYLER" trademarks with BOB TYLER TOYOTA and its products and services.

53. Notwithstanding BOB TYLER TOYOTA's well known and prior common law rights in the "BOB TYLER" trademarks, the Defendants have, with actual notice of BOB TYLER TOYOTA's rights, and long after BOB TYLER TOYOTA established its rights in the trademarks, adopted and used one or more of the "BOB TYLER" trademarks in conjunction with their sale, distribution, offer for sale, marketing and advertising of their competing services.

54. Defendants have used one or more of the "BOB TYLER" trademarks without authorization from BOB TYLER TOYOTA. Defendants' use of the "BOB TYLER" trademarks in Florida, and interstate commerce, has caused and will cause a likelihood of confusion, deception and mistake, in that the buying public will conclude that the competing services offered are authorized, sponsored, approved or associated with BOB TYLER TOYOTA.

55. Defendants have utilized one or more of the "BOB TYLER" trademarks in conjunction with the competing and Infringing Services in an effort to delude and confuse the public into believing that the Infringing Services offered by Defendants were approved by, or had been authorized and/or sponsored by BOB TYLER TOYOTA.

56. Subsequent to Plaintiff's use of its distinctive "BOB TYLER" trademark, Defendants purchased Internet keywords which include Plaintiff's "BOB TYLER" trademark from search engine providers including, but not limited to *Google*, *Yahoo*, and others in order to drive traffic to their own website(s) offering goods and services which compete with the goods and services offered by the Plaintiff.

57. The Infringing Services will dilute the goodwill and reputation of BOB TYLER TOYOTA.

58. The use of the "BOB TYLER" trademarks in conjunction with the Infringing Services, which Infringing Services offered are of an inferior quality to such services provided by BOB TYLER TOYOTA, will further dilute the good will and reputation of BOB TYLER TOYOTA.

59. The Defendants, by misappropriating and using the "BOB TYLER" trademarks in connection with the Infringing Services, are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their services. The Defendants have caused such Infringing Services to enter into interstate commerce willfully, with full knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing that Defendants' Infringing Services are authorized or emanate from BOB TYLER TOYOTA.

60. These acts constitute a violation of §43(a) of The Lanham Act, 15 U.S.C. §1125(a).

61. The Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

62. Said acts of infringement and unfair competition will cause irreparable injury to BOB TYLER TOYOTA if the Defendants are not restrained by the Court from further violation of BOB TYLER TOYOTA's rights, as BOB TYLER TOYOTA has no adequate remedy at law.

63. BOB TYLER TOYOTA has suffered damages as a result of the aforesaid acts.

64. The Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure BOB TYLER TOYOTA and its business, or alternatively, with reckless disregard as to the harm their actions would cause BOB TYLER TOYOTA.

## II. <u>UNFAIR COMPETITION UNDER THE LANHAM ACT</u>

65. BOB TYLER TOYOTA incorporates paragraphs 1 through 49, and brings the following claim for unfair competition/infringement of an unregistered trademark, pursuant to 15 U.S.C. §1125, against all Defendants.

66. Plaintiff's "BOB TYLER" trademark for use in connection with auto sales and related goods and services is inherently distinctive.

67. By and through extensive advertising and other promotional efforts, Plaintiff's "BOB TYLER" trademark has acquired distinctiveness and secondary meaning.

68. By and through extensive advertising and other promotional efforts, Plaintiff has acquired considerable goodwill associated with the use of its distinctive "BOB TYLER" trademark.

69. Subsequent to Plaintiff's use of its distinctive "BOB TYLER" trademark, Defendants purchased Internet keywords which include Plaintiff's "BOB TYLER" trademark from search engine providers including, but not limited to *Google*, *Yahoo*, and others in order

to drive traffic to their own website(s) offering goods and services which compete with the goods and services offered by the Plaintiff.

70. Defendants' use of the phrase "BOB TYLER" as an Internet keyword as described herein is likely to cause confusion among consumers and is an infringement of Plaintiff's "BOB TYLER" trademark.

71. Plaintiff has been damaged by Defendants use of "BOB TYLER" as an Internet keyword.

72. The acts complained of herein have caused irreparable harm to the Plaintiff.

## III. VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

73. BOB TYLER TOYOTA incorporates the allegations set forth in paragraphs 1 through 49 of this Complaint.

74. Defendants have registered, trafficked in, and used in interstate commerce the domains

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com,
- www.bobtylertoyotainventory.com,
- www.bobtylerusedsuzuki.com,
- www.bobtylerusedcarquotes.com,
- www.bobtylerusedcars.com,
- www.bobtylerpreowned.com,
- www.bobtylertoyotaquotes.com,
- www.bobtylertoyotausedcars.com,
- www.tyletoyota.com, and
- www.tylrtoyota.com

("the infringing domains")

without the authorization of BOB TYLER TOYOTA with the bad faith intent of profiting off the "BOB TYLER" trademarks my misleading or deceiving the public into believing that BOB TYLER TOYOTA is associated or affiliated with, or sponsors or endorses Defendants, their products or services and websites offering competing products or

services. Such registration, trafficking, and/or use was done after Plaintiff's BOB TYLER

trademark became distinctive.

75. The aforesaid actions constitute cyberpiracy in violation of §43(d) of the Trademark Act

of 1946, 15 U.S.C. §1125(d).

76. Defendants unauthorized registration and use (and possible trafficking) of the infringing

domains has caused, and unless and until restrained, enjoined and transferred to BOB

TYLER TOYOTA, will continue to cause irreparable injury to BOB TYLER TOYOTA

and to the goodwill associated with its "BOB TYLER" trademarks. BOB TYLER

TOYOTA has no adequate remedy at law.

77. Defendants have, upon information and belief also registered the following domain

names:

- www.youtubeeasternshoretoyota.com,
- www.youtubekia.com,
- www.youtubenewcars.com,
- www.youtubenissan.com,
- www.youtubetoyota.com,
- www.youtudenewcars.com, (intentionally misspelled)
- www.bmwutube.com,
- www.bmwyoutube.com
- www.freebmwutube.com,
- www.freehyundaiutube.com,
- www.freekiautube.com,
- www.freelexusutube.com,
- www.freenissanutube.com,
- www.freetoyotautube.com,
- www.hyundaiutube.com,
- www.kiautube.com,
- www.lexusutube.com,
- www.mybmwutube.com,
- www.mylexusutube.com,
- www.mytoyotautube.com,
- www.newhyundaiutube.com,
- www.newkiautube.com,
- www.newnissanutube.com,

- www.newtoyotautube.com,
- www.nissanutube.com,
- www.thehyundaiutube.com,
- www.thenissanutube.com,
- www.thetoyotautube.com,
- www.toyotautube.com,
- www.utubehyundai.com,
- www.utubekia.com,
- www.utubelexus.com,
- www.utubetoyota.com,
- www.esh-youtube.com,
- www.eshyoutube.com,
- www.est-youtube.com,
- www.estyoutube.com,
- www.hk-youtube.com,
- www.hod-youtube.com,
- www.hodyoutube.com,
- www.hondayoutube.com,
- www.kia-youtube.com,
- www.kiayoutube.com,
- www.lexusutube.com,
- www.lexusyoutube.com,
- www.yahoonewcars.com,
- www.yahoousedvehicles.com,
- www.allenturnerusedcar.com,
- www.allenturnerusedsupercenter.com,
- www.carlgregory-usedcars.com,
- www.carlgregory-usedcarsonline.com,
- www.carlgregory-usedcarstore.com,
- www.carlgregoryusedtrucks.com,
- www.chuckstevensusedcars.com,
- www.craigslisttoyotasearch.com,
- www.craigslistusedautos.com,
- www.craigslistusedcarsearch.com,
- www.craigslistvehiclesearch.com,
- www.criagslistpreowned.com, (intentionally misspelled).
- www.ebayautoinventory.com,
- www.ebayautoprices.com,
- www.ebayautoquotes.com,
- www.ebayautosearch.com,
- www.ebaypreownedautos.com,
- www.ebaypreownedinventory.com,
- www.ebaypreownedprices.com,
- www.ebaypreownedquotes.com,

- www.ebaypreownedsearch.com,
- www.ebayprewonedcarinventory.com,
- www.ebayusedcarprices.com,
- www.ebayusedcarquotes.com,
- www.lexususedebay.com,
- www.lexusebayprices.com,
- www.toyotausedebay.com,
- www.hondaebayprice.com,
- www.hondaebayprices.com,
- www.hyundaiebayprice.com,
- www.edvoylesusedkia.com,
- www.facebookhyundai.com,
- www.facebookkia.com,
- www.facebooklexus.com,
- www.facebooknewcars.com,
- www.facebooknissan.com,
- www.facebooktoyota.com,
- www.facebookusedcars.com,
- www.freehyundaifacebook.com,
- www.freelexusfacebook.com,
- www.freenissanfacebooke.com,
- www.kiafacebook.com,
- www.lexusfacebook.com,
- www.myfacebookhyundai.com,
- www.myfacebooklexus.com,
- www.myfacebooknissan.com,
- www.myfacebooktoyota.com,
- www.myhyundaifacebook.com,
- www.mylexusfacebook.com,
- www.mynissanfacebook.com,
- www.mytoyotafacebook.com,
- www.newfacebookhyundai.com,
- www.newfacebooktoyota.com,
- www.newkiafacebook.com,
- www.newnissanfacebook.com,
- www.newtoyotafacebook.com,
- www.thefacebookhyundai.com,
- www.thefacebooklexus.com,
- www.thefacebooknissan.com,
- www.thehyundaifacebook.com,
- www.thekiafacebook.com,
- www.thelexusfacebook.com,
- www.thenissanfacebook.com,
- www.thetoyotafacebook.com,

- www.toyotafacebookonline.com,
- www.hyundairfacebook.com,
- www.kia-facebook.com,
- www.gateway-usedcars.com,
- www.gatewaybadcredit.com,
- www.gatewayusedcars.com,
- www.googlenewcars.com,
- www.googleusedvehicles.com,
- www.hyundaitwitter.com,
- www.esh-twitter.com,
- www.eshtwitter.com,
- www.est-twitter.com,
- www.esttwitter.com,
- www.hod-twitter.com,
- www.hodtwitter.com,
- www.lexustwitter.com,
- www.nissan-twitter.com,
- www.jimelliskia.com,
- www.kenbogsusedcars.com,
- www.msnnewcars.com,
- www.msnusedcars.com,
- www.myspacenewcars.com,
- www.eshmyspace.com,
- www.estmyspace.com,
- www.hod-myspace.com,
- www.hondamyspace.com,
- www.lexusmyspace.com,
- www.paypalnewcars.com,
- www.paypalusedcars.com,
- www.robdoll-nissan.com,
- www.robdoll-nissanonline.com,
- www.robdoll-nissanstore.com,
- www.robdoll-toyota.com,
- www.robdollbadcredit.com,
- www.robdollbestpriceusedcars.com,
- www.robdollnewnissanprice.com,
- www.robdollnissanquote.com,
- www.robdollusedcars.com,
- www.robdollusednissanprice.com,
- www.robdollusednissanpriceonline.com,
- www.robdollusednissanpricestore.com,
- www.robdollusedtrucks.com,
- www.sandysansingbadcredit.com,
- www.sandysansingbestprice.com,

- www.sandysansingnissanbestprice.com,
- www.sandysansingnissanbestquote.com,
- www.sandysansingnissanusedcars.com,
- www.sandysansingusedcars.com,
- www.sandysansingusednissans.com.
- www.yahoonewcars.com,
- www.yahoousedvehicles.com,
- www.chrimeirs.com,
- www.chrismiers.com,
- www.chrismiersautomall.com,
- www.chrismiersautomotive.com,
- www.chrismyersautomalleasternshore.com,
- www.chrismyerseasternshore.com,
- www.chrismyersofeasternshore.com,
- www.esterbrooktoyotausedcars.com,
- www.freefacebookhyundai.com,
- www.freefacebooklexus.com,
- www.freefacebooknissan.com,
- www.glynnsmithusedcars.com,
- www.jaytoyota.com,
- www.jay-toyota.com,
- www.jaymazdausedcars.com,
- www.jayscionunsedcars.com,
- www.jaytoyotabadcredit.com,
- www.jaytoyotabestpriceusedcars.com,
- www.jaytoyotabestpriceusedtrucks.com,
- www.jaytoyotaprice.com,
- www.jaytoyotapriceonline.com,
- www.jaytoyotaquote.com,
- www.jaytoyotausedcars.com,
- www.jaytoyotausedtrucks.com,
- www.jimellikia.com,
- www.kenboggsusedcars.com
- www.marazziautomall.com,
- www.marazziinfinitey.com,
- www.marazziinfiniti.com,
- www.marazziluxurycars.com,
- www.marazzitoyota.com,
- www.marazziusedcars.com,
- www.mcconnellusedcars.com,
- www.palmerspreowned.com,
- www.palmerstoyotapreowned.com,
- www.palmerstoyotausedcars.com,
- www.palmersusedcars.com,

- www.palmerstoyota.com,
- www.palmetoyota.com,
- www.reinhardtioyotausedcars.com,
- www.springhillpreowned.com,
- www.springhilltoyotapreowned.com,
- www.springhilltoyotausedcars.com,
- www.springhillusedcars-toyota.com,
- www.tameronhondausedcars.com,
- www.tameronusedcars.com,
- www.toyotaebayprice.com,
- www.toyotaebayprices.com,
- www.treadwellusedcars.com,
- www.usedcarsatlanticclassiccars.com,
- www.usedcarscoastalford.com,
- www.usedcarsdeanmccrary.com, and
- www.usedtoyotaebayprice.com.

78. Each of the above domain names is, upon information and belief, a domain name which incorporates the famous or distinctive trademark of a third party.  The Defendants' registration of these domain names supports a finding of bad faith under the ACPA.

## IV. VIOLATION OF FLORIDA UNFAIR COMPETITION

79. Plaintiff BOB TYLER TOYOTA repeats and realleges paragraphs 1 through 49 of this Complaint.

80. Plaintiff BOB TYLER TOYOTA has expended significant sums of money in advertising and marketing products featuring its trademarks, and in creating a consumer demand for such products in Florida and elsewhere in the United States. Consequently, these products have become widely known and accepted.

81. The Defendants have adopted and used one or more of the "BOB TYLER" trademarks in conjunction with their sale, distribution, offer for sale, marketing and advertising of Infringing Services in Florida, thereby passing them off as services authorized or distributed by BOB TYLER TOYOTA.

82. The Defendants have knowingly and willfully appropriated one or more of the "BOB TYLER" trademarks in an effort to create an impression that the Defendants' competing services are sanctioned by BOB TYLER TOYOTA in order to misappropriate all of the goodwill associated with the "BOB TYLER" trademarks.

83. The Defendants' acts, as described above, constitute unfair competition and will, unless enjoined by this Court, result in the destruction and/or dilution of the goodwill of the "BOB TYLER" trademarks and of BOB TYLER TOYOTA's valuable property rights to the unjust enrichment of the Defendants.

84. The Infringing Services which were advertised, marketed, offered for sale and sold by the Defendants were calculated and likely to deceive and mislead the purchasers who paid monies or otherwise offered non-public/confidential financial information in the belief that they originate with or are authorized by BOB TYLER TOYOTA.

85. The continued passing off by the Defendants of such unauthorized services as if such services originated with or were authorized by BOB TYLER TOYOTA, has caused and, unless restrained, will continue to cause serious and irreparable injury to BOB TYLER TOYOTA.

86. BOB TYLER TOYOTA has no adequate remedy at law and is suffering irreparable harm as a result of the aforesaid actions by the Defendants.

87. BOB TYLER TOYOTA has suffered damages as a result of the aforesaid acts.

88. The Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively with the intent to injure BOB TYLER TOYOTA and its business, or alternatively, with reckless disregard as to the harm their actions would cause to BOB TYLER TOYOTA.

## V. <u>DILUTION IN VIOLATION OF FLORIDA STATUTE § 495.151</u>

89. BOB TYLER TOYOTA repeats and realleges paragraphs 1 through 49 of this Complaint.

90. The infringing, unauthorized, and unlawful acts of the Defendants as alleged above have, and will continue to have, the effect of diluting the distinctive quality of the "BOB TYLER" trademarks. Said acts constitute an unlawful dilution of BOB TYLER TOYOTA's rights at common law and under the Florida Anti-Dilution Statute, Fla.Stat. §495.151.

91. The Defendants' commercial exploitation of the "BOB TYLER" trademarks in conjunction with the offering of the Infringing Services will cause confusion in the marketplace regarding the sponsorship and origin of such services and will tarnish BOB TYLER TOYOTA's reputation in the marketplace.

92. BOB TYLER TOYOTA has no adequate remedy at law and has suffered irreparable harm and damage as a result of the Defendants' acts. BOB TYLER TOYOTA will continue to suffer irreparable harm and damage as a result of Defendants' acts unless injunctive relief is granted as requested.

## VI. <u>VIOLATION OF FLORIDA STATUTE § 668.704</u>

93. BOB TYLER TOYOTA repeats and realleges paragraphs 1 through 49 of this Complaint.

94. Defendants have fraudulently used Plaintiff's identifying information in order to represent themselves, directly, or by implication, to be Plaintiff, without the authority of Plaintiff, through the use of web pages or multiple domain names.

95. Defendants' actions have occurred with a frequency as to constitute a pattern or practice.

96. Defendants have used such fraudulent web pages and domain names to induce, request, or solicit a resident of Florida to provide identifying information.

97. Plaintiff is an owner of a web page, trademark, or service mark who is adversely affected by Defendants' violation.

98. Pursuant to Florida Statute §668.704(2)(a) Plaintiff is entitled to injunctive relief to restrain Defendants from continuing the violation (or beginning the same, or similar activity in the future).

99. Pursuant to Florida Statute §668.704(2)(b) Plaintiff is entitled to recover damages in an amount equal to the greater of: (1) actual damages arising from the violation; or (2) the sum of $5,000 for each violation of the same nature.

100.    Pursuant to Florida Statute §668.704(3) Plaintiff sets forth that this Court may increase the award of actual damages to an amount not to exceed three times the actual damages sustained if the Court finds that the violations have occurred with a frequency as to constitute a pattern and practice.

101.    Pursuant to Florida Statute §668.704(5) Plaintiff has incurred attorneys' fees and court costs in seeking to enforce against this violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BOB TYLER TOYOTA demands a Preliminary Injunction, and consistent with that, entry of a judgment against each and every Defendant as follows:

1. Permanent injunctive relief restraining each Defendant, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, from:

a. further infringing the "BOB TYLER" trademarks by distributing, circulating, marketing, offering for sale, advertising, promoting, displaying or otherwise offering any services or products not authorized by BOB TYLER TOYOTA, including but not limited to "automotive retail services" and related goods and services and supporting materials

(whether in print or in electronic form) bearing any simulation, reproduction, counterfeit, copy or colorable imitation of any of the "BOB TYLER" trademarks.

b. using any simulation, reproduction, counterfeit, copy or colorable imitation of any of the "BOB TYLER" trademarks in connection with the promotion, advertisement, display, sale, offer for sale, circulation or distribution of any services not authorized by BOB TYLER TOYOTA in such a fashion as to relate or connect, or tend to relate or connect, such services in any way with BOB TYLER TOYOTA or any services offered for sale, sponsored or approved by, or connected with BOB TYLER TOYOTA.

c. making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services offered for sale by the Defendants are in any manner associated or connected with Plaintiff BOB TYLER TOYOTA.

d. engaging in any other activity constituting unfair competition with BOB TYLER TOYOTA, or constituting an infringement of any of the BOB TYLER TOYOTA trademarks or of BOB TYLER TOYOTA's rights in, or to use or to exploit, said trademarks, or constituting any dilution of any of BOB TYLER TOYOTA's names, reputation, or good will;

e. effecting assignments or transfers, forming new entities or association or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (d);

f. secreting, destroying altering, removing or otherwise dealing with the unauthorized Infringing domains or associated goods/services or any books or records which may

26

contain any information relating to the selling, marketing, offering for sale, advertising, promoting or displaying of all unauthorized services which infringe any of BOB TYLER TOYOTA's "BOB TYLER" trademarks;

g. from aiding, abetting, contributing to or otherwise assisting anyone from infringing upon the "BOB TYLER TOYOTA" trademarks; and

h. Directing that Defendants deliver for destruction all unauthorized advertisements relating thereto in their possession or under their control bearing any of the BOB TYLER TOYOTA "BOB TYLER" trademarks or any simulation, reproduction, counterfeit, copy or colorable imitations thereof, and all heat transfers, screens, matrices, and other means of making same.

i. Directing the Defendants as Registrants of the infringing domains

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com,
- www.bobtylertoyotainventory.com,
- www.bobtylerusedsuzuki.com,
- www.bobtylerusedcarquotes.com,
- www.bobtylerusedcars.com,
- www.bobtylerpreowned.com,
- www.bobtylertoyotaquotes.com,
- www.bobtylertoyotausedcars.com,
- www.tyletoyota.com, and
- www.tylrtoyota.com

and other domains later found to be infringing to immediately transfer the domains to Plaintiff's care, and if necessary, directing the Registrar of these domains to assist in the transfer of same. Directing the Defendants to transfer any other domains which contain Plaintiff's trademark "BOB TYLER" or any domain which includes a term or phrase that

is confusingly similar to Plaintiff's "BOB TYLER" trademarks, and if necessary, the Registrar of those domains to assist in the transfer of same.

j. Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that any products advertised, marketed, manufactured, sold or otherwise circulated or promoted by Defendants are authorized by BOB TYLER TOYOTA, or related in any way to BOB TYLER TOYOTA's services or products.

k. Its actual damages for Defendants' unfair competition and false advertising.

l. That BOB TYLER TOYOTA be awarded the statutory maximum for each act of cybersquatting by Defendants, which includes, but is not limited to the statutory maximum per domain of One Hundred Thousand Dollars ($100,000.00) for at least a total of One Million Four Hundred Thousand Dollars ($1,400,000.00).

m. That BOB TYLER TOYOTA be awarded the transfer of the domains:

- www.bobtylersuzukiquotes.com,
- www.bobtylerprices.com,
- www.bobtylertotyotaprices.com,
- www.bobtylerquotes.com,
- www.bobtylertoyotapreowned.com,
- www.bobtylertoyotainventory.com,
- www.bobtylerusedsuzuki.com,
- www.bobtylerusedcarquotes.com,
- www.bobtylerusedcars.com,
- www.bobtylerpreowned.com,
- www.bobtylertoyotaquotes.com,
- www.bobtylertoyotausedcars.com,
- www.tyletoyota.com, and
- www.tylrtoyota.com

and any other domains which include the "BOB TYLER" trademarks or any other domains that contain any word or phrase that is confusingly similar to the "BOB

TYLER" trademarks. That all accompanying traffic reports or other site analytics associated with all such domains be produced and awarded to BOB TYLER TOYOTA.

n. That BOB TYLER TOYOTA be awarded its reasonable attorneys' fees and investigative fees.

o. That BOB TYLER TOYOTA be awarded its costs in bringing this action.

p. That BOB TYLER TOYOTA be awarded punitive damages for the Defendants' willful acts of unfair competition under Florida's common law.

q. That Defendants be restrained from using such fraudulent web pages and domain names to induce, request, or solicit anyone to provide identifying information.

r. That pursuant to Florida Statute §668.704(2)(a) that BOB TYLER TOYOTA be entitled to injunctive relief to restrain Defendants from continuing the violation (or beginning the same, or similar activity in the future).

s. That pursuant to Florida Statute §668.704(2)(b) that BOB TYLER TOYOTA be entitled to recover damages in an amount equal to the greater of: (1) actual damages arising from the violation; or (2) the sum of $5,000 for each violation of the same nature.

t. That pursuant to Florida Statute §668.704(3) that the Court increase the award of actual damages to an amount not to exceed three times the actual damages sustained by finding that the violations have occurred with a frequency as to constitute a pattern and practice.

u. That BOB TYLER TOYOTA have such other and further relief that this Court deems just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated: May 17, 2010                     Respectfully submitted:

                                      By:  _s/FRANK HERRERA__
                                        Frank Herrera
                                        Florida Bar No. 494801
                                        Email: fherrera@qpwblaw.com
                                        Gustavo Sardiña (to be admitted to the District)
                                        Florida Bar No. 31162
                                        Email: gsardina@qpwblaw.com
                                        QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
                                        9300 South Dadeland Boulevard,
                                        Fourth Floor
                                        Miami, Florida 33156
                                        Tel.: (305) 670-1101
                                        Fax.: (305) 670-1164
                                        **-and-**
                                        Patrick V. Douglas, Esq.
                                        Florida Bar No. 68639
                                        Email: pdouglas@qpwblaw.com
                                        QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
                                        215 S. Monroe Street, Suite 510
                                        Tallahassee, Florida  32301-1804
                                        Telephone: (850) 412-1042
                                        Facsimile: (850) 412-1043
                                        Tel.: (305) 670-1101
                                        Fax.: (305) 670-1164
                                        **Attorneys for the Plaintiff**